FILED
CLERK
1/29/2016 8:36 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
T-MOBILE NORTHEAST LLC, successor-
in-interest to Omnipoint Communications, Inc.
and Omnipoint Facilities Network 2, LLC,

                Plaintiff,

    -against-

RIVERHEAD WATER DISTRICT,

                Defendant.
------------------------------------------------------------X

**ORDER**
15-CV-6310 (SJF)(AYS)

FEUERSTEIN, J.

On November 4, 2015, Plaintiff, T-Mobile Northeast LLC, successor-in-interest to Omnipoint Communications, Inc. and Omnipoint Facilities Network 2, LLC ("T-Mobile" or "Plaintiff"), filed an action seeking, *inter alia*, to enjoin Defendant, Riverhead Water District (the "District" or "Defendant"), from impeding Plaintiff's installation of wireless cellular equipment on the District's property. For the reasons stated below, T-Mobile's motion for a preliminary injunction is denied.

**I.    BACKGROUND**

    *A.    The Lease Agreements*

Pursuant to two (2) lease agreements, T-Mobile, a telecommunications carrier, is a tenant on two (2) parcels of real property owned by the District that are located at: (i) Plant #9, Lewin Hills, Wading River, New York, NY ("Plant #9"); and (ii) 1035 Pulaski Road, Riverhead, New York, NY ("Pulaski Road"). [DE 1, Compl., at ¶ 1]. At each location, telecommunications carriers have attached wireless equipment to an elevated water tank on the property to transmit

customers' cellular signals and to provide wireless service to customers. *Id.* at ¶¶ 1, 15; Exs. A and B.

On or about May 25, 2004, T-Mobile and the District entered into a lease agreement regarding Plant #9 that allowed T-Mobile to install, *inter alia*, six (6) antennas "and appurtenances" on the water tank located on the property (the "Plant #9 Lease"). *See id.*, Compl., at ¶¶ 18-19, 22, Ex. A, at ¶¶ 3, 7(a). After the parties executed the Plant #9 Lease, T-Mobile installed six (6) of its antennas on the Plant #9 water tank in 2004. *Id.*, Compl., at ¶ 36.

On March 23, 2006, the parties entered into a lease agreement regarding Pulaski Road that is in "the same form as the Plant #9 Lease" (the "Pulaski Road Lease," and with the Plant #9 Lease, the "Leases"). [DE 1, Compl., at ¶¶ 28-29, Ex. B, at ¶¶ 3, 7(a)]. Pursuant to the Pulaski Road Lease, T-Mobile installed six (6) antennas on the Pulaski Road water tank in 2006. *Id.*, Compl., at ¶ 36.

### B. *T-Mobile Seeks the District's Consent to Install Different Antennas and Associated Equipment on the Water Tanks*

On August 4, 2014, T-Mobile sent a letter to the District requesting permission to "updat[e] certain equipment . . . within the existing lease area" of Plant #9 that consists of: (i) replacing three (3) of the existing antennas on the water tank with larger and heavier antennas; and (ii) installing three (3) remote radio units ("RRUs") near each of the three (3) new antennas to amplify the radio signals being transmitted from the site. *Id.*, Compl., at ¶¶ 49-50, Ex. D; DE 2, Pl.'s Mem. of Law, at 8. On October 3, 2014, T-Mobile sent another letter to the District, this time requesting permission to "updat[e] certain equipment . . . within the existing lease area" of Pulaski Road, consisting of: (i) installing three (3) new, larger, and heavier antennas on the water tank to supplement the existing six (6) antennas; and (ii) installing three (3) RRUs near each of the three (3) new antennas. [DE 1, Compl., at ¶ 51, Ex. E; DE 2, Pl.'s Mem. of Law, at 9].

On October 13, 2014, Bench Strength Partners, Inc. ("Bench Strength"), retained by the District as its consultant, responded to both of T-Mobile's letters with proposed term sheets that sought "major terms of amendment" to the existing Leases, including rent increases. [DE 1, Ex. F]. On November 17, 2014, T-Mobile rejected the District's proposed term sheets and asserted that T-Mobile was permitted to make the installations on the water tanks based upon the terms of the existing Leases. *Id.*, Ex. G. On November 25, 2014, the District contradicted T-Mobile's interpretation of the language in the Leases and declared that the District "will not grant approval without the consideration outlined in the [October 13, 2014] Terms [sic] Sheet[s]." *Id.*, Ex. H. On February 12, 2015, T-Mobile sent a final letter to the District reiterating T-Mobile's position regarding the Leases. [DE 8, Def.'s Mem. of Law, Ex. 9]. On November 4, 2015, more than a year after first requesting the District's consent to install new equipment on the water tanks, T-Mobile filed this action seeking preliminary and permanent injunctive relief. [DE 1, Compl.].

## II. DISCUSSION

### A. *Standard of Review: Preliminary Injunction*

To obtain a preliminary injunction, a plaintiff must demonstrate: (a) that "irreparable harm is likely in the absence of an injunction," *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008); (b) "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief," *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quotations and citation omitted)); and (c) "that the public's interest weighs in favor of granting an injunction," *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir.

3

2011). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24, 129 S. Ct. at 376. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quotations and citation omitted).

As "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, . . . the moving party must first demonstrate that such injury is *likely* before the other requirements for the issuance of an injunction will be considered." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007) (emphasis added); *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09-0237, 2009 WL 790312, at *6 (E.D.N.Y. Mar. 23, 2009). "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy . . . ." *Winter*, 555 U.S. at 22, 129 S. Ct. at 375-76 (emphasis added). To establish irreparable harm, the injury alleged by the movant must be "actual and imminent," not "remote or speculative," and not compensable through solely monetary damages. *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66 (citing *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). A party's "loss of reputation, good will, and business opportunities" resulting from a breach of contract may constitute irreparable harm, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004), such as where the party is threatened with a loss of a business, a "relatively unique product," or the ability to provide its product or service to the market or its customers, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37, 38 (2d Cir. 1995) (citations omitted). There is no irreparable harm, however, where the loss of goodwill is doubtful and the loss of a profitable line of business is compensable through monetary awards. *Id.*; *Fox. Ins. Co.*, 2009 WL 790312, at *6.

In assessing irreparable harm, courts also consider whether a movant has unduly delayed seeking a preliminary injunction. *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-cv-3685, 2015 WL 4162757, at *32 (E.D.N.Y. July 8, 2015); *see Tom Doherty Assocs., Inc.*, 60 F.3d at 39; *Env. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 280 (E.D.N.Y. 2014). The Second Circuit has "found delays of as little as ten [10] weeks sufficient to defeat [a finding] of irreparable harm," except where there is "good reason" for the delay, such as "when a plaintiff is not certain of the infringing activity or has taken additional time to examine the infringing product." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144-45 (2d Cir. 2005); *see also Silber v. Barbara's Bakery, Inc.,* 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (citations omitted) ("While delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief.").

### B. *No Likelihood of Irreparable Harm*

T-Mobile has failed to demonstrate a likelihood of irreparable harm in the absence of a preliminary injunction. Although it advances the well-established principle that preliminary injunctions may be warranted in cases involving real property, the facts of this case are distinguishable from those of its cited cases. *See, e.g.*, *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (mineral rights); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 549 F.3d 1079, 1090 (7th Cir. 2008) (real property case involving, *inter alia*, a "real and irreparable" loss of goodwill, where movant sustained at least $30,000 in lost charitable contributions); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) (new construction physically obstructed movant's store); *East*

5

*Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 828-29 (4th Cir. 2004) (owner excluded from own property and public interest in minimizing shortage in natural gas).

In addition, T-Mobile's claim that it "faces the *prospect* of having its reputation damaged, losing goodwill, and losing customers" is insufficient to demonstrate a likelihood of irreparable harm. [DE 2, Pl.'s Mem. of Law, at 14 (emphasis added); *see* DE 11, Pl.'s Reply Br., at 7]. Its alleged harms are "doubtful" and do not rise to the requisite standard of being "likely," "actual," or "imminent." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007); *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09-0237, 2009 WL 790312, at *6 (E.D.N.Y. Mar. 23, 2009). As T-Mobile concedes: (i) an inability to "update" its cellular equipment on the water tanks "*may* impair [its] ability to adequately transmit the increasing volume of voice and data signals for its customers, which *could* lead to degraded service and dropped calls;" and (ii) "there *may* be impaired wireless service." [DE 2, Pl.'s Mem. of Law, at 15 (emphasis added)].

This Court has previously held that speculative allegations of harm fail to establish a likelihood of irreparable harm. *See Fox Ins. Co.*, 2009 WL 790312, at *6 (Feuerstein, J.) ("Envision has not demonstrated that the very viability of its business is threatened absent an injunction. Envision's argument is that if a major retailer in its pharmacy network is not paid for prescriptions it has dispensed to [plaintiff's] Medicare participants, that retailer *may* cease doing business with Envision and *if* that occurred, Envision would *likely* fail to meet the Medicare access requirements, making it impossible for Envision to continue to serve its Medicare clients. Such speculative and conclusory allegations are insufficient to establish irreparable harm."). In response, T-Mobile disputes the meaning of its phrase "may suffer harm" and summarily argues

in a footnote that "[i]rreparable harm will be suffered. It is just a question of when." [DE 11, Pl.'s Reply Br., at 8 n.7]. Such conclusory statements are unpersuasive.

Moreover, any harm that T-Mobile may suffer, including loss of customers or the cost of relocation of its antennas, may be remedied by monetary damages. [*See* DE 8, Def.'s Mem. of Law, at 12]. Therefore, a preliminary injunction is unwarranted.

T-Mobile has also delayed in seeking an injunction, thereby further weakening its claim of irreparable harm. Despite sending letters to the District in August 2014 and October 2014, T-Mobile waited more than a year until November 2015 to file its action. Although its purported good-faith effort to resolve the dispute without litigation is commendable, the premise of a preliminary injunction is that the moving party requires "immediate relief to protect its rights" and cannot afford a delay. *Fox Ins. Co.*, 2009 WL 790312, at *8. As T-Mobile has failed to establish a likelihood of irreparable harm, an analysis of the remaining requirements for the issuance of a preliminary injunction is unnecessary, *see Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007); *Fox Ins. Co.* 2009 WL 790312, at *6, and the motion for a preliminary injunction is denied.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction is denied.

**SO ORDERED.**

                                              s/ Sandra J. Feuerstein
                                              Sandra J. Feuerstein
                                              United States District Judge

Dated: January 29, 2016
       Central Islip, New York